NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3310

EMMETT B. CHAMBERS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Michael P. Calof, Law Offices of Michael P. Calof, of Woodland Hills, California, for petitioner.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Steven J. Gillingham, Assistant Director. Of counsel on the brief was Paul St. Hillaire, Office of Personnel Management, of Washington, DC.

Appealed From: United States Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.
.

# United States Court of Appeals for the Federal Circuit

2006-3310

EMMETT B. CHAMBERS,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  March 16, 2007

_____

Before NEWMAN, <u>Circuit Judge</u>, CLEVENGER, <u>Senior Circuit Judge</u>, and BRYSON, <u>Circuit Judge</u>.

CLEVENGER, <u>Senior Circuit Judge</u>.

Petitioner Emmett B. Chambers petitions for review the final decision of the Merit Systems Protection Board ("MSPB" or "the Board") affirming the reconsideration decision of the Office of Personnel Management ("OPM") that Chambers was overpaid $9,660 in annuity benefits under the Civil Service Retirement System ("CSRS").  We <u>affirm</u>.

I

Chambers is a former custodian for the United States Postal Service who, since December 20, 2002, has been on disability retirement due to post-traumatic stress disorder arising from his service in the United States Marine Corps beginning in the summer of 1965 and ending with an honorable discharge in August of 1968. He was continuously employed by the Postal Service from May 5, 1979, until his retirement. However, during his final years of service—from March 30, 1999 until December 20, 2002—Chambers was on leave without pay status because his disability retirement was tied up in the approval process. In January of 2003, after he had gained the requisite approval, OPM authorized retirement annuity payments dating back to April 1, 1999, as well as annuity payments going forward. On November 8, 2004, OPM notified Chambers that he had been overpaid due to an administrative error, and therefore, that his monthly annuity would be reduced by $268.33 for the following three years.

Subsequent to this notification Chambers asked for reconsideration, arguing that his annuity payments had been miscalculated on account of several OPM errors. On March 16, 2005, OPM issued a reconsideration decision affirming the initial overpayment decision. Chambers subsequently appealed to the MSPB. On February 2, 2006, an MSPB Administrative Judge ("AJ") affirmed OPM's reconsideration decision, finding that OPM had carried its burden of "establish[ing] by the preponderance of the evidence that an overpayment occurred." See 5 CFR § 831.1407(a). Chambers requested review by the Board, and the AJ's initial decision was affirmed on May 17, 2006. Chambers now petitions this court for review of the MSPB decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

2006-3310                                    2

II

In reviewing final orders of the Board, we will "hold unlawful and set aside any agency action, findings and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence."  5 U.S.C. § 7703(c).

III

Chambers argues that the Board erred in holding that OPM carried its burden by failing to recognize several OPM errors.  First, Chambers asserts that OPM wrongly calculated his average pay.  An employee's average pay, also known as the employee's "high three," for CSRS annuity purposes is defined by statute:

> "[A]verage pay" means the largest annual rate resulting from averaging an employee's . . . rate[ ] of basic pay in effect over any 3 consecutive years of creditable service . . . with each rate weighted by the time it was in effect[.]

5 U.S.C. § 8331(4).  "Basic pay" is further defined by statute to <u>exclude</u> "bonuses, allowances, overtime pay, military pay, pay given in addition to the base pay of the position as fixed by law or regulation except as provided by [provisions of law not relevant here]."  5 U.S.C. § 8331(3).  Thus, OPM regulations provide that an employee's basic pay is determined by looking to the employee's Individual Retirement Record ("IRR"), Standard Form 2806.  5 C.F.R. § 831.103(a).

Pursuant to this statutory and regulatory scheme, OPM determined from Chambers' IRR that his largest three-year span of basic pay occurred in 1996, 1997, and 1998, resulting in an average of $35,478.  Chambers believes this calculation was incorrect because his W-2 Forms from those years reflect that he was paid, on average,

$38,140.67. The AJ rejected this argument, explaining that the pay shown in Chambers' W-2 Forms "might reflect 'additional' pay such as overtime, night differential pay, or some other form of pay" statutorily excluded from the definition of "basic pay." Chambers challenges this conclusion as "pure speculation" by the AJ. Chambers further argues that even if OPM properly used the salaries listed on his IRR form, OPM should have calculated his "high three" based on the years 2000-02 because he had a greater base pay then than he did in 1996-98.

We disagree. As a threshold matter, we note that the record on appeal is incomplete with respect to the W-2 Forms, as it only contains Chambers' 1996 W-2 Form. The record from the proceedings below is likewise incomplete, as it only contains Chambers' 1996 and 1997 W-2 Forms. Based on the record we have, however, it is clear that Chambers' arguments must be rejected. For example, although Chambers' 1996 W-2 Form does in fact list his total pay as $38,733.99, the record from the MSPB proceedings contains a form entitled "Personal Statement of Benefits" from 1996 explaining that his total pay "include[es] overtime, premium pay, variable pay, [territorial cost-of-living allowance], awards, pay for holidays, annual leave and sick leave." None of those categories of pay are excepted from the statutory exclusion of additional pay set forth in 5 U.S.C. § 8331(3). The same form indicates that Chambers' "annual salary" for 1996 was $34,866, which exactly matches the amount listed in Chambers' IRR for that year. The record contains a similar form from 1998, having the same explanation of his total pay, and indicating his "annual salary" as $36,126, which also exactly matches the amount listed in Chambers' IRR for that year. As far as we are able to discern, neither our record nor the record from the proceedings below contains a

"Personal Statement of Benefits" from 1997. Nevertheless, we believe the forms from 1996 and 1998 adequately demonstrate that any discrepancy between the IRR and W-2 Forms is explained by the existence of precisely the categories of additional pay suggested by the AJ. Indeed, in pre-hearing submissions to the AJ, Chambers specifically contended that his average pay calculation was erroneous because OPM had failed to give him "credit for all night pay differential [sic] and mandatory holidays worked." Thus, it is apparent that the AJ's suggestion was not "pure speculation," but rather was based on both substantial evidence in the record as well as the representations made in Chambers' submissions.

As to Chambers' further argument that his "high three" should have been calculated based on the years 2000-02, Chambers' IRR lists him as having a basic pay of approximately $39,000, $40,000 and $41,000, in each of those years respectively. This argument is unavailing, however, because Chambers was on leave without pay beginning in 1999. As such, he may only receive six-months credit for each year thereafter. 5 U.S.C. § 8332(f). Giving Chambers credit for only six months in each of 2000, 2001 and 2002 would result in a lower average pay calculation of roughly $20,000. Accordingly, we find no reversible error in OPM's "high three" calculation.

The second error perceived by Chambers relates to OPM's calculation of his creditable military service. Credit for periods of military service is statutorily limited to "honorable active service." 5 U.S.C. § 8331(13). In determining the amount of "honorable active service" credit to which Chambers is entitled, OPM looked to his Form DD-214 on file with the Department of Veterans Affairs ("VA"), which reports his "Total Active Service" as two years, eleven months, and twenty-eight days. Chambers argues

that he is actually entitled to three years, two months, and sixteen days based on two months and eighteen days of "Other Service" listed on his DD-214. Chambers also points to a letter from the VA which states that he "Entered on Active Duty" on June 19, 1965, and that he was "Released from Active Duty" on August 23, 1968, as further proof that OPM did not give him enough military service credit.

Again, we disagree. Pursuant to the express mandate of 5 U.S.C. § 8331(13), OPM gave Chambers credit only for his "active service," and declined to give him credit for his "other service." Chambers fails to adequately explain, and we discern no reason why, OPM should have disregarded the plain language of the statute and given him credit for non-active service. And with respect to the letter from the VA, to the extent there is a conflict with his DD-214, Chambers should raise that issue with the VA and then, if his DD-214 is in error, he should request a subsequent annuity adjustment from OPM. Therefore, we find no reversible error in OPM's military service credit calculation.

On a related note, Chambers argues that he should be credited with an additional two years, eleven months, and twenty-eight days of service because his IRR appears to show his start date as May 7, 1976, instead of the May 5, 1979 date used by OPM. Chambers misreads the IRR. The row labeled "Career Appt" shows a date of "05-05-79," corresponding to the date used by OPM. The "05-07-76" date pointed to by Chambers is his service computation date. The additional time reflected by that date corresponds precisely with the amount of active military service OPM already credited to Chambers. Had OPM used May 7, 1976 for his start date, Chambers would have incorrectly received double credit for his military service.

We have fully considered the remainder of Chambers' arguments and we do not find them persuasive. Consequently, we hold that the Board's decision was supported by substantial evidence.

## IV

For the reasons stated above, the decision of the Board is affirmed.

## COSTS

No costs.